UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KARL R. DABRITZ, | No. CV 07-3728-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on June 8, 2007, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on June 26, 2007, and July 3, 2007. Pursuant to the Court's Order, the parties filed a Joint Stipulation on April 18, 2008, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on March 10, 1956. [Administrative Record ("AR") at 65.] He has completed three years of college [AR at 94], and has past relevant work experience as a test engineer and a quality engineer. [AR at 89, 97-99.]

On May 21, 2003, plaintiff filed his application for Disability Insurance Benefits, alleging that he has been unable to work since August 30, 2001, due to sleep apnea, bipolar disorder, neck pain, and arm pain. [AR at 65-67, 87-96.] After his application was denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 40, 50-53, 55-56.] A hearing was held on May 12, 2004, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 310-28.] A supplemental hearing was held on February 15, 2005, at which time plaintiff again appeared with counsel and testified on his own behalf. [AR at 329-45.] A vocational expert also testified. [AR at 337-42.] On March 31, 2006, the ALJ determined that plaintiff was not disabled. [AR at 41-49.] Plaintiff requested review of the hearing decision. [AR at 60-61.] On June 23, 2006, the Appeals Council vacated the ALJ's decision of March 31, 2006, and remanded the case for further proceedings.[1] [AR at 62-64.] A subsequent hearing was held on September 5, 2006, at which time plaintiff again appeared with counsel and testified on his own behalf. [AR at 346-62.] The ALJ issued a decision dated October 19, 2006, concluding that plaintiff was not disabled. [AR at 11-13, 14-21.] When the Appeals Council denied plaintiff's

---

[1] The Appeals Council directed the ALJ upon remand to: (1) "[o]btain vocational evidence sufficient to allow a comparison between the claimant's residual functional capacity and the mental and physical demands of his past relevant work, as he actually performed it and as it is generally performed in the national economy"; (2) "obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base" if consideration is given to step five of the sequential evaluation; (3) pose hypothetical questions that "reflect the specific capacity/limitations established by the record as a whole"; (4) "ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy"; and (5) "identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations." [AR at 64.]

1  request for review on April 30, 2007, the ALJ's decision became the final decision of the
2  Commissioner. [AR at 6-9.] This action followed.

### III.
### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

### IV.
### THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

/
/
/

1  **A.     THE FIVE-STEP EVALUATION PROCESS**

2         The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing
3  whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,
4  828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must
5  determine whether the claimant is currently engaged in substantial gainful activity; if so, the
6  claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in
7  substantial gainful activity, the second step requires the Commissioner to determine whether the
8  claimant has a "severe" impairment or combination of impairments significantly limiting his ability
9  to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.
10 If the claimant has a "severe" impairment or combination of impairments, the third step requires
11 the Commissioner to determine whether the impairment or combination of impairments meets or
12 equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,
13 Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id.
14 If the claimant's impairment or combination of impairments does not meet or equal an impairment
15 in the Listing, the fourth step requires the Commissioner to determine whether the claimant has
16 sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled
17 and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform
18 past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie
19 case of disability is established. The Commissioner then bears the burden of establishing that
20 the claimant is not disabled, because he can perform other substantial gainful work available in
21 the national economy. The determination of this issue comprises the fifth and final step in the
22 sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966
23 F.2d at 1257.
24 /
25 /
26 /
27 /
28 /

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability.[2] [AR at 16.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: bipolar affective disorder, sleep apnea, and obesity. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 16.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to "lift and/or carry up to 50 pounds occasionally and up to 25 pounds frequently; sit up to 6 hours out of an 8-hour workday; stand and/or walk in combination up to 6 hours out of an 8-hour workday; and perform simple and complex tasks, with a moderate limitation on his ability to interact appropriately with the general public." [AR at 16.] At step four, the ALJ concluded that plaintiff is capable of performing his past relevant work as a mechanical equipment test engineer. [AR at 19-20.] Accordingly, the ALJ found plaintiff not disabled, and did not proceed to step five in the process.[4] [AR at 20-21.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to: (1) properly evaluate the opinion of the treating physicians; and (2) properly evaluate plaintiff's subjective testimony. Joint Stipulation ("Joint Stip.") at 3. As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

---

[2] The ALJ also determined that plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2006." [AR at 15.]

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[4] The ALJ noted that "even if the claimant were limited to no more than unskilled work due to his mental impairment and thus could not perform his past relevant skilled work, he could still perform a significant number of other jobs that exist in the national economy." [AR at 20.] Therefore, "the claimant would be found, alternatively, 'not disabled' under the framework of Medical-Vocational Rules 203.21 and 203.28 . . .". [AR at 20.]

**TREATING PHYSICIAN'S OPINION**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830. As a general rule, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).

Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. Where the treating physician's opinion is contradicted by another physician, the ALJ may only reject the opinion of the treating physician if the ALJ provides specific and legitimate reasons for doing so that are based on substantial evidence in the record. See Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion"); SSR 96-2p ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

An examining physician's opinion based on independent clinical findings that differ from the findings of a treating physician may constitute substantial evidence. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, (citation omitted) or (2) findings based on objective medical tests that the treating physician has not herself

1  considered." (citation omitted)).  However, even if an examining physician's opinion constitutes
2  substantial evidence, the treating physician's opinion is still entitled to deference.[5]  See id.; see
3  also Social Security Ruling[6] 96-2p (a finding that a treating physician's opinion is not entitled to
4  controlling weight does not mean that the opinion is rejected).

5        Finally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial
6  evidence that justifies the rejection of the opinion of either an examining physician *or* a treating
7  physician."  Lester, 81 F.3d at 831 (emphasis in original).  The opinion of a non-examining
8  physician may serve as substantial evidence when it is consistent with other independent evidence
9  in the record.  Id. at 830-31.  "A report of a non-examining, non-treating physician should be
10 discounted and is not substantial evidence when contradicted by all other evidence in the record."
11 See Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984) (quoting Millner v. Schweiker, 725
12 F.2d 243, 245 (4th Cir. 1984)).

13       In the Mental Impairment Questionnaire dated September 16, 2003, plaintiff's treating
14 psychiatrist, Dr. Robert C. Bright, Jr., found, among other things, that plaintiff suffered from
15 marked difficulties in maintaining social functioning and had frequent deficiencies of concentration,
16 persistence or pace resulting in failure to complete tasks in a timely manner.  [AR at 244-47.]  Dr.
17 Bright assessed plaintiff with a current Global Assessment of Functioning score of 45,[7] and with

---

[5] "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." Social Security Ruling 96-2p. In determining what weight to accord the opinion of the treating physician, the ALJ is instructed to consider the following factors: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the degree to which the opinion is supported by relevant medical evidence; consistency of the opinion with the record as a whole; specialization; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

[6] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[7] A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or

a past GAF score of 50, which represented plaintiff's highest GAF score in the past year. [AR at 244.] In the decision, the ALJ rejected the opinion of Dr. Bright for the following reasons: (1) Dr. Bright's opinion that plaintiff has marked limitations on his ability to maintain social functioning "is not [] supported by the evidence now of record"; (2) "Dr. Bright did not state that the claimant has any problems with concentration, persistence or pace or problems with his ability to perform complex tasks and skilled work"; (3) "Dr. Bright stated that the claimant's prognosis was in fact fair, and he did not have reduced intellectual functioning"; and (4) the GAF score of 50 assigned to plaintiff by Dr. Bright is not supported by the record. [AR at 17-18.] Instead, relying only a State Agency finding, the ALJ found that plaintiff has the residual functional capacity to, among other things, "perform simple and complex tasks, with a moderate limitation on his ability to interact appropriately with the general public."[8] [AR at 16-17.] Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of Dr. Bright. Joint Stip. at 3-14. As discussed below, the Court agrees with plaintiff.

     First, the ALJ concluded that Dr. Bright's finding that plaintiff has marked limitations on his ability to maintain social functioning [AR at 247] is not supported by the evidence of record. [AR at 17.] To support this conclusion, the ALJ cited an initial mental health treatment assessment from August 8, 2003, indicating that plaintiff's "interactional style" was "culturally congruent," which was in contrast to Dr. Bright's finding on August 19, 2003, that his affect was often "silly." [AR at 17, 220, 267.] As further support, the ALJ noted Dr. Sohini P. Parikh's statement in her consultative psychiatric evaluation that plaintiff "gets along with family members, has close friends

---

environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th Ed. 2000). A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 34.

   [8] Aside from a moderate limitation on plaintiff's ability to interact appropriately with the general public, the Mental Residual Functional Capacity Assessment form dated July 15, 2003, indicated that plaintiff is "not significantly limited" in any other area of social interaction. [AR at 190.] The Psychiatric Review Technique form dated July 15, 2003, indicated that plaintiff had only a "mild" functional limitation in his ability to maintain social functioning. [AR at 203.]

8

and has no problems with neighbors," as well as the July 24, 2006, treatment note that indicated that plaintiff "went on one interview per week for 3 weeks." [AR at 17, 179, 290.] The findings relied on by the ALJ are not the only findings noted in the documents on which he relied, however. In the mental status evaluation, plaintiff was also noted as having an euphoric mood, a labile/sad affect, and unimpaired intellectual functioning, which is mostly consistent with Dr. Bright's observations.[9] [Compare AR at 220 with AR at 267.] In the psychiatric evaluation, Dr. Parikh noted that plaintiff "has difficulty completing household tasks at times," diagnosed plaintiff with bipolar disorder, depressive type, and assessed plaintiff with a GAF score of 50. [AR at 179, 181.] The ALJ's use of certain findings here to the exclusion of others is improper, as he cannot pick and choose from the evidence in order to support his conclusions. See Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability") (citing Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984)); see also Gallant, 753 F.2d at 1456 (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence").

Moreover, the ALJ's reliance on the inconsistency between the initial mental health assessment, in which plaintiff was noted as having a "culturally congruent" interactional style, and Dr. Bright's finding that plaintiff's affect was "silly," is not warranted based on the record as a whole. In a letter signed by Dr. Bright on August 19, 2003, he stated that plaintiff "often has a silly to mildly euphoric[10] affect and speaks rapidly." [AR at 220.] This is supported by Dr. Bright's treatment notes. In his initial assessment of plaintiff on December 19, 2002, Dr. Bright noted that

---

[9] The mental status evaluation was part of the Adult Initial Assessment form, which contained information regarding, among other things, plaintiff's psychiatric history, medical history, medications, psychological history, and diagnosis. [AR at 264-68.] Considered as a whole, the Adult Initial Assessment does not at all contradict Dr. Bright's findings. [AR at 247.]

[10] Euphoric or euphoria refers to an elevated mood. An excessive degree of euphoria "is characteristic of hypomania or mania, abnormal mood states associated with bipolar disorders." http://www.medterms.com/script/main/hp.asp (select the "MedTerms Dictionary" tab; then enter the term in the "Search Medterms" box; then select the appropriate hyperlink).

plaintiff was cooperative, and described plaintiff's thought form as "linear," his affect as "euthymic," and his mood as "ok." [AR at 227.] On January 21, 2003, Dr. Bright indicated that plaintiff's thought form was linear and noted that plaintiff's "speech [was] rapid" and that he was "laughing frequently." [AR at 226.] On April 15, 2003, Dr. Bright again indicated that plaintiff's thought form was linear and noted that plaintiff was "giggling." [AR at 223.] In the Mental Impairment Questionnaire dated September 16, 2003, Dr. Bright noted that plaintiff was "[f]requently hypomanic during visits with rapid speech, and euphoria . . ." [AR at 245.] Dr. Bright's findings in his treatment notes are consistent and support his finding noted in the letter regarding plaintiff's interactional style.

Additionally, the ALJ's conclusion that certain medical records indicated that plaintiff "had unremarkable behavior, unremarkable speech, normal thought processes and sometimes appropriate affect" is also based on the ALJ's selection of particular portions of the record that support his conclusion. [AR at 18, 289, 292, 298-302.] Dr. Bright's treatment notes regarding plaintiff's mood, affect, and thought process are not inconsistent with the evidence in the record. While the ALJ is correct that some of the findings noted in the medication logs containing the mental status examinations of plaintiff are relatively normal, other findings in the medication logs reveal, among other things, that plaintiff's mood was euthymic or dysphoric, and his affect was sad/constricted. [AR at 250, 253, 255, 256, 258, 278, 286, 289, 292, 294, 298-302.] Further, in the mental status examination performed by Dr. Parikh on July 8, 2003, Dr. Parikh noted the following: (1) plaintiff is cooperative; (2) plaintiff's mood is depressed and plaintiff's affect is mood congruent; (3) plaintiff has feelings of hopelessness, helplessness, anhedonia, and worthlessness; and (4) plaintiff's thoughts are logical.[11] The findings noted in the medication logs and the findings of Dr. Parikh noted in her psychiatric evaluation concerning plaintiff's mood, affect, and thought process, do not necessarily undermine the findings of Dr. Bright concerning the same mental status

---

[11]  In the July 15, 2003, Psychiatric Review Technique form completed by State Agency psychiatrist Dr. Mark Salin, Dr. Salin concurred with Dr. Parikh's findings that plaintiff had a depressed mood and a congruent, logical affect. [AR at 205.]

categories. The ALJ's isolation of specific findings to support his conclusion and his failure to consider all of the relevant medical evidence of record was error.

Although the ALJ indicates that he accepts only the State Agency finding that plaintiff has only a moderate limitation on his ability to interact with the general public, the ALJ's acceptance of the State Agency finding, without a proper rejection of the opinion of Dr. Bright, is insufficient.[12] Generally, more weight is given to the opinions of treating physicians because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Dr. Bright performed an initial mental status examination of plaintiff on December 19, 2002, saw plaintiff on a regular basis for almost a year, conducted thorough examinations of plaintiff, and prescribed medications to plaintiff. [AR at 220-27, 244-47.] See 20 C.F.R. §§ 404.1527(d)(2)(i), (ii), 416.927(d)(2)(i), (ii) (weight accorded to a treating physician's opinion dependent on length of the treatment relationship, frequency of visits, and nature and extent of treatment received). Based on the length of Dr. Bright's treatment relationship with plaintiff, Dr. Bright had the broadest range of knowledge regarding plaintiff's medical conditions, which is supported by the record. See Smolen, 80 F.3d at 1279; see also Lester, 81 F.3d at 833 ("The treating physician's continuing relationship with the claimant makes him especially qualified . . . to form an overall conclusion as to functional capacities and limitations, as well as prescribe or approve the overall course of treatment."). The ALJ may only give less weight to a treating physician's opinion that conflicts with that of another physician if the ALJ provides sufficient specific and legitimate reasons for discounting the opinion. See SSR 96-2p ("the notice of the

---

[12] The ALJ asserts that "[a]lthough [the] State Agency evidence is based on a nonexamining relationship, it is consistent with the other objective and opinion evidence now of record." [AR at 17.] This conclusory statement made by the ALJ does not reach the level of specificity required in order to reject the opinion of a treating physician, and does not support his rejection of Dr. Bright's assessment. See Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) (conclusory reason "does not achieve the level of specificity" required to justify an ALJ's rejection of a treating source's medical opinion).

11

determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."); see also 20 C.F.R. §§ 404.1527(d), 416.927(d); Lester, 81 F.3d at 830; Orn, 495 F.3d at 632-33. Here, the ALJ failed to discuss certain relevant observations and findings made by Dr. Bright, and did not provide legally sufficient reasons for disregarding the opinion of Dr. Bright. The ALJ's failure to completely consider and address the opinion of plaintiff's treating source undercuts his reliance on the State Agency psychiatrist.[13] See SSR 96-8p (the residual functional capacity assessment must be based on all of the relevant evidence in the case record, such as medical history, medical signs and laboratory findings, the effects of treatment, recorded observations, medical source statements, and effects of symptoms).

Next, the ALJ's statement that Dr. Bright "did not state that the claimant has any problems with concentration, persistence or pace or problems with his ability to perform complex tasks and skilled work" is not a wholly accurate reflection of the record, and thus is not a specific and legitimate reason to reject the opinion of Dr. Bright. While it is true that in his letter dated August 19, 2003, Dr. Bright did not state that plaintiff "has any problems with concentration, persistence or pace, or problems with his ability to perform complex tasks and skilled work," Dr. Bright did state therein that plaintiff "most likely had Bipolar Affective Disorder" and did note that "[m]ost of [plaintiff's] mental activities are impaired in the area of social interaction and adaptation." [AR at 220.] Moreover, on September 16, 2003, i.e., approximately one month later, Dr. Bright indicated that plaintiff suffered from bipolar affective disorder I, most recent episode ("MRE") hypomanic. [AR at 244.] Dr. Bright noted that plaintiff had "[o]ddities of thought, perception, speech or behavior," "perceptual disturbances," and "difficulty thinking or concentrating." Contrary to the ALJ's assertion, Dr. Bright indeed found that plaintiff had the following functional limitations as a

---

[13] Not only did the ALJ improperly reject Dr. Bright's opinion, he also disregarded the psychiatric consultative examiner's opinion, i.e., that plaintiff had a GAF score of 50, in favor of the non-examining State Agency psychiatrist's opinion, despite the State Agency psychiatrist's reliance on the same psychiatric consultative examiner's findings. [AR at 17, 205.]

12

result of his mental impairments: (1) marked[14] restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; and (3) frequent deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere). [AR at 247.] Further, plaintiff was noted as having difficulty working at a regular job on a sustained basis. [AR at 247.] The ALJ's isolation of certain findings noted by Dr. Bright in his letter is not an accurate reflection of the contents of the letter, which, when read in its entirety, contains other relevant findings, or of the treatment records as a whole. The fact that Dr. Bright's letter did not specifically mention plaintiff's functional limitations with respect to concentration, persistence or pace, or note plaintiff's inability to perform complex tasks and skilled work, does not negate Dr. Bright's concurrent findings therein that plaintiff likely suffers from bipolar affective disorder and that plaintiff's mental activities in the area of social interaction and adaptation are impaired, or his findings of bipolar affective disorder and his GAF assessments of 50 in various treatment notes, or his previously-noted assessment of plaintiff's limitations in the Questionnaire. [AR at 220, 221-27, 244-47.] Given the ALJ's failure to address all of the relevant findings noted in the letter and in the Mental Impairment Questionnaire -- or to indicate why he relied on some findings to the exclusion of others -- the ALJ's statement does not constitute a specific and legitimate reason for rejecting Dr. Bright's opinion.

Furthermore, the ALJ's reliance on Dr. Bright's statement that plaintiff's "prognosis was in fact fair" and that plaintiff "did not have reduced intellectual functioning" is misplaced. [AR at 18.] Read in context, it is clear that Dr. Bright's assertion that plaintiff's prognosis was "fair" was meant only to serve as Dr. Bright's prediction of the likely future course/outcome of plaintiff's mental impairments, and was in no way suggesting that plaintiff was completely recovered or that plaintiff no longer had any symptoms or marked functional limitations. [AR at 220, 247.] Here again, the ALJ has simply isolated evidence in order to support his conclusion of nondisability. Dr. Bright's

---

[14] "Marked means more than moderate, but less than extreme. A marked limitation may arise when several activities or functions are impaired or even when only one is impaired, so long as the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately and effectively." [AR at 247.]

prognosis of "fair" is not the totality of information provided by Dr. Bright.  In fact, in the Mental Impairment Questionnaire, although Dr. Bright noted that plaintiff's prognosis was "fair," he diagnosed plaintiff with bipolar affective disorder I MRE hypomanic, assessed plaintiff with a current GAF score of 45, and noted the following symptoms: (1) poor memory; (2) sleep disturbances; (3) personality change; (4) mood disturbances; (5) emotional lability; (6) delusions or hallucinations; (7) oddities of thought, perception, speech or behavior; (8) perceptual disturbances; (9) time or place disorientation; (10) social withdrawal or isolation; (11) illogical thinking or loosening of associations; (12) decreased energy; (13) manic syndrome; (14) anhedonia or pervasive loss of interests; (15) psychomotor agitation or retardation; (16) paranoia or inappropriate suspiciousness; (17) difficulty thinking or concentrating; and (18) hostility or irritability. [AR at 244-47.] Additionally, Dr. Bright's finding that plaintiff does not have a low I.Q. or reduced intellectual functioning does not contradict Dr. Bright's finding that plaintiff has marked limitations in his ability to maintain social functioning.  The ALJ's seclusion of the prognosis of "fair" and the finding of no reduced intellectual functioning is insufficient to constitute a specific and legitimate reason for rejection of Dr. Bright's opinion.

       Finally, the ALJ's assertion that the GAF score of 50 assigned to plaintiff by Dr. Bright is not supported by the record is incorrect.[15]  Dr. Bright's records, as well as the objective medical evidence, support a GAF assessment of 50.  The proper weight that an ALJ should give to a treating physician's opinion depends on whether sufficient data supports the opinion and whether the opinion comports with other evidence in the record.  See 20 C.F.R. §§ 404.1527, 416.927. On several occasions, from December 19, 2002, to July 10, 2003, Dr. Bright assessed plaintiff with a GAF score of 50.  [AR at 221-27.]  In the Mental Impairment Questionnaire, Dr. Bright assessed plaintiff with a current GAF score of 45, and noted that, in the past year, plaintiff's highest GAF score was 50.  [AR at 244.]  Further, on July 8, 2003, Dr. Parikh assessed plaintiff with a GAF

---

[15] The ALJ rejected several GAF assessments in his decision.  [AR at 17-18.]  The ALJ asserted that "none of these GAF scores are supported by the record."  [AR at 18.]

score of 50.[16] [AR at 181.] On August 8, 2003, in the Adult Initial Assessment form, plaintiff was assessed with a GAF score of 48.[17] [AR at 268.] On August 11, 2003, in an Initial Psychiatric Evaluation, plaintiff was assessed with a GAF score of 45. [AR at 257-59.] Each of the GAF assessments noted in the record indicates serious symptoms or a serious impairment in social, occupational, or school functioning. See DSM-IV at 34. Given the consistency between Dr. Bright's GAF assessments and the other independent GAF assessments in the record, and given that plaintiff's medical records report a history of, among other things, bipolar disorder, depression and sleep apnea, the ALJ's rejection of Dr. Bright's GAF assessment of 50 as lacking supporting evidence itself lacks substantiation.[18] In addition, while a GAF score may not have a "direct correlation" to the Social Security severity requirements in the Listings (see Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. § 50746-01 (Aug. 21, 2000)), the ALJ does not proffer any authority indicating that Dr. Bright's assessment of a GAF score of 50 and its implications may be rejected without sufficient reason. See Olds v. Astrue, 2008 WL 339757, at *4 (D. Kan. Feb. 5, 2008) (a low GAF score does not alone determine disability, but it is a piece of evidence to be considered with the rest of the record) (citation omitted); see also Escardille v. Barnhart, 2003 WL 21499999, at *5-6 (E.D. Pa. June 24, 2003) (ALJ's failure to address a GAF score of 50 "or its meaning regarding plaintiff's ability to maintain

---

[16] The ALJ rejected the GAF score of 50 assigned to plaintiff by Dr. Parikh because "Dr. Parikh's GAF score is not based on a treatment relationship." [AR at 17, 181.] Curiously, the ALJ accepted only the opinion of the non-examining State Agency psychiatrist, who relied on Dr. Parikh's findings, and who also rendered an opinion that was not based on a treatment relationship.

[17] The ALJ rejected the GAF score of 48, as "the GAF score is contained in an assessment not signed by a social worker, let alone a licensed psychologist or licensed psychiatrist." [AR at 17-18.]

[18] The reasons proffered by the ALJ to reject the GAF score of 48 assigned to plaintiff in the August 8, 2003, Adult Initial Assessment and the GAF score of 50 assigned to plaintiff by Dr. Parikh in the July 8, 2003, psychiatric evaluation do not apply to Dr. Bright, as Dr. Bright is a licensed psychiatrist and his GAF score of 50 assigned to plaintiff is based on a treatment relationship. [AR at 17-18.] See supra, fns. 16, 17.

employment" was error). This is especially true where the evidence shows that plaintiff was assessed with the same or lower GAF score by physicians other than his own treating source.

Accordingly, the ALJ erred by not giving any specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Bright's opinion. As such, remand is warranted on this issue.[19]

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly consider the opinion of plaintiff's treating source. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: August 22, 2008

/s/ Paul L. Abrams
_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[19] As the ALJ's consideration on remand of the treating physician's assessment may impact the other issue raised by plaintiff in the Joint Stipulation, the Court will exercise its discretion not to address that issue in this Order. Rather, plaintiff's subjective testimony should be re-examined in light of the remand Order.